IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:15-CT-3334-FL

| | |
|---|---|
| CHARLES ALONZO TUNSTALL-BEY, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) ORDER |
| PAULA YVONNE SMITH, LETITIA OWEN, VALERIE M. TREXLER, EVONNE MOORE, LYNDA PADGETT, CLINTON BROCKINGTON, AND THOMAS NUZUM, | )<br>)<br>)<br>)<br>)<br>) |
| Defendants.[1] | ) |

This matter is before the court on defendants'[2] motions for summary judgment (DE 114, 125), filed pursuant to Federal Rule of Civil Procedure 56. The motions were fully briefed and thus the issues raised are ripe for decision. For the reasons that follow, the court grants the motions and dismisses plaintiff's claims.

**STATEMENT OF THE CASE**

On December 28, 2015, plaintiff, a state inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging claims for deliberate indifference to serious medical

---

[1] The court dismissed previously-named defendants Carmen Hendricks, Ronald Bell, John Douglas Mann, Mary Locklear, Wilda McCain, Beverley Stubbs, Peter Keyser, Brian McKnight, Peter Woglom, Arthur Davis, Sami Husan, Donald V. Micklos, and Dr. Falcon in separate orders. (DE 13, 33, 46, 92, 106).

[2] As discussed further below, defendant Brockington failed to file answer or Rule 12 motion after service of plaintiff's amended complaint, and default has been entered against him. Thus, he did not join the instant motions for summary judgment.

needs in violation of the Eighth Amendment to the United States Constitution. As relief, plaintiff seeks compensatory and punitive damages, and an injunction directing prison officials to treat his medical conditions.

On January 6, 2017, plaintiff filed the operative amended complaint. The court conducted its frivolity review of the amended complaint on January 26, 2017, and allowed the matter to proceed. Plaintiff's complaint names the following defendants: Paula Yvonne Smith ("Smith"); Carmen Hendricks ("Hendricks"); John Douglas Mann ("Mann"); Evonne Moore ("Moore"); Lynda Padgett ("Padgett"); Donald Micklos ("Micklos"); Letitia Owen ("Owen"); Valerie M. Trexler ("Trexler"); Ronald Bell ("Bell"); Clinton Brockington ("Brockington"); Thomas Nuzum[3] ("Nuzum"); and Dr. Falcon ("Falcon"). Defendants are North Carolina Department of Public Safety ("DPS") prison officials or DPS-contracted medical providers. On February 16, 2017, the court granted plaintiff's motion to voluntarily dismiss his claims against defendants Micklos and Falcon.

On March 30, 2017, plaintiff filed motion to appoint counsel. The court denied the motion in order entered April 4, 2017.

In the interim, on April 3, 2017, defendant Hendricks filed motion to dismiss. Defendants Mann and Nuzum also filed motion to dismiss on May 5, 2017. Additionally, defendant Brockington failed to file responsive pleading or Rule 12 motion after service of the amended complaint, and default was entered against him by the clerk, on December 6, 2017. Plaintiff filed motions for default judgment as to defendant Brockington on December 14, 2017, and January 22, 2018.

On February 23, 2018, the court entered order denying plaintiff's motions for default

---

[3] Plaintiff originally named defendant Nuzum as "Dr. Newsome" but subsequent investigation by prison officials determined his correct surname is Nuzum.

judgment and granting defendants Hendricks and Mann's motions to dismiss. The order also granted defendant Nuzum's motion to dismiss as to the official capacity claims alleged against him, but denied his motion as to the individual capacity claims.

On February 26, 2018, defendant Bell filed motion to dismiss, which the court subsequently granted, dismissing all claims against defendant Bell. On March 8, 2018, the court entered initial case management order governing discovery and dispositive motions practice, and also appointed North Carolina Prisoner Legal Services ("NCPLS") to represent plaintiff for the discovery phase of the case. The parties completed discovery on or about September 10, 2018. On September 17, 2018, NCPLS moved to withdraw from representing plaintiff, noting its opinion that further appointment of counsel is not necessary in this action. The court granted NCPLS's motion to withdraw on September 19, 2018.

Defendant Nuzum filed the instant motion for summary judgment on October 10, 2018, supported by memorandum of law, statement of material facts, and appendix. The appendix includes defendant Nuzum's personal affidavit, affidavit of non-party Dr. Steve Choi ("Choi"), Dr. Choi's curriculum vitae, and selected records from plaintiff's medical file. Plaintiff timely filed response in opposition to the motion, supported by memorandum of law, statement of material facts, plaintiff's personal affidavit, affidavit of non-party Danny Pritchard ("Pritchard"), and selected medical records.

On December 17, 2018, defendants Smith, Owen, Trexler, Moore, and Padgett (together, the "DPS defendants"), filed the instant motion for summary judgment, supported by memorandum of law, statement of material facts, and appendix. The DPS defendants' appendix includes defendants Moore, Owen, Padgett, Smith, and Trexler's personal affidavits, pertinent DPS medical policies,

3

plaintiff's medical records, and plaintiff's administrative grievances dated October 31, 2012, July 23, 2015, August 22, 2015, September 11, 2015, and August 16, 2016. Plaintiff timely filed response in opposition, supported by memorandum of law, plaintiff's personal affidavit, and affidavit of non-party Pritchard. DPS defendants filed reply in further support the instant motion for summary judgment on February 22, 2019.

## STATEMENT OF FACTS

The facts viewed in the light most favorable to plaintiff may be summarized as follows. During the relevant time period, plaintiff was serving a state term of imprisonment at various DPS facilities. (Padgett Aff. (DE 128-3) ¶ 8; Owen Aff. (DE 128-5) ¶ 7)

A.  Hepatitis C Claim

Plaintiff suffers from Hepatitis C. (Nuzum Aff. (DE 117-1) ¶ 7). The medical defendants allegedly refused to treat plaintiff's Hepatitis C because he is African American. (Pl.'s Aff. (DE 121-2) at 1; July 23, 2015, Grievance (DE 128-10) at 3, 5).[4] Defendants also allegedly refused to prescribe Harvoni, a more effective medication, because during the relevant time period Harvoni was not available to DPS inmates. (Pl.'s Aff. (DE 121-2) at 1).

Hepatitis C is a virus that damages the liver. (Nuzum Aff. (DE 117-1) ¶¶ 5,7). Plaintiff's medical records show that in June 2014, plaintiff had no signs or symptoms of cirrhosis of the liver, and a "FibroSure score" of one, which corresponds to "fairly mild" liver damage. (Ex. B., Choi Aff. (DE 117-4) at 47; Choi Aff. (De 117-2) ¶ 7).

For most of 2014 through 2017, the only available DPS-approved treatment for Hepatitis

---

[4]Unless otherwise specified, page numbers specified in citations to the record in this order refer to the page number of the document designated in the court's electronic case filing (ECF) system, and not to page numbering, if any, specified on the face of the underlying document.

C was Interferon plus Ribavirin ("Interferon Therapy"). (Nuzum Aff. (DE 117-1) ¶ 7). Defendant Nuzum determined plaintiff was not a good candidate for Interferon Therapy because plaintiff is African American and has a Hepatitis C "viral genotype 1a and body IL28B genotype CT." (Id.). Interferon Therapy's success rate for patients with this clinical profile is less than 20%. (Id.). As a result of the limited effectiveness of Interferon Therapy, the significant side effects associated with the treatment, and the relatively mild damage to plaintiff's liver, defendant Nuzum determined that plaintiff should not be placed on Interferon Therapy in 2014. (Id. ¶¶ 7-8). Defendant Nuzum, however, continued monitoring plaintiff's liver condition every six to nine months, and his liver health "remained excellent" until at least 2017. (See id.).

In January 2016, DPS secured a contract to provide Harvoni to inmates with Hepatitis C. (Id. ¶ 10). Plaintiff initially did not meet criteria for treatment, however, because his FibroSure score was less than two. (Id.). In 2017, plaintiff's FibroSure score increased to two, and plaintiff was thereafter approved for Harvoni treatment. (Id. ¶ 11). After an eight-week course of Harvoni, plaintiff showed no signs of Hepatitis C, and no residual liver disease. (Id.).

B.   Leg Injury Claim

On August 13, 2015, plaintiff's right leg "collapsed," and he fell on a concrete floor, allegedly injuring his knee and ankle. (See Sept. 11, 2015, Grievance (DE 128-7) at 3, 5). After plaintiff declared a medical emergency, defendant Moore informed prison officials that they should not provide plaintiff a wheelchair or other assistance ambulating to the infirmary. (Id. at 5). Plaintiff "hobbl[ed] painfully" to the infirmary, where he received crutches and was scheduled for an X-ray. (Id.).

Additional facts pertinent to plaintiff's claims will be discussed below.

5

# DISCUSSION

A.      Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (internal quotation omitted).

Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party). "[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability,

. . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489–90.

B.   Analysis

The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (1996). "In order to make out a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (internal quotation omitted). The first prong is objective – the prisoner must show that "the deprivation of [a] basic human need was objectively sufficiently serious." Id. (internal quotation omitted). In the medical context, a basic human need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999)).

The second prong is subjective – the prisoner must show that "subjectively the officials acted with a sufficiently culpable state of mind." See Strickler, 989 F.2d at 1379 (internal quotations

7

omitted). The mental state for "deliberate indifference entails something more than negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994). "It requires that a prison official know of and disregard the objectively serious condition, medical need, or risk of harm." Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995); see Farmer, 511 U.S. at 837. A plaintiff therefore must establish the prison official's "actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014) (citing Farmer, 511 U.S. at 837–39). The subjective knowledge requirement can be proved "through direct evidence of a prison official's actual knowledge or circumstantial evidence tending to establish such knowledge . . . ." Scinto v. Stansberry, 841 F.3d 219, 225–26 (4th Cir. 2016).

Deliberate indifference is thus "a particularly high bar to recovery." Iko, 535 F.3d at 241. For claims involving medical care, "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Negligence or medical malpractice in diagnosis or treatment are not exceptional circumstances. See id.; see also Estelle v. Gamble, 429 U.S. 97, 105–08 (1976).

Where, as here, the Eighth Amendment claim is premised on delayed medical care, the plaintiff must show "the delay results in some substantial harm to the patient," such as "marked exacerbation of the prisoner's medical condition or frequent complaints of severe pain." Formica v. Aylor, 739 F. App'x 745, 755 (4th Cir. 2018) (internal quotation omitted); Sharpe v. S.C. Dep't of Corr., 621 F. App'x 732, 734 (4th Cir. 2015); Webb v. Hamidullah, 281 F. App'x 159, 166-67

(4th Cir. 2008); see also Alderson v. Concordia Parish Corr. Facility, 848 F.3d 415, 422 (5th Cir. 2017); Garrett v. Stratman, 254 F.3d 946, 950 (10th Cir. 2001).[5]

1. Hepatitis C Claim

Here, plaintiff's claim against defendant Nuzum and the medical DPS defendants is premised on delayed medical care – his primary allegation is they failed to treat his Hepatitis C in a timely fashion. Plaintiff therefore must demonstrate that he has suffered "substantial harm" as a result of the delayed treatment. See Formica, 739 F. App'x at 755; Sharpe, 621 F. App'x at 734. Plaintiff cannot make this showing where the undisputed evidence shows he has been cured of Hepatitis C and the delay in treatment did not cause any significant harm to his liver. (See Nuzum Aff. (DE 117-1) ¶ 11 (showing plaintiff was cured of Hepatitis C and had no residual liver disease)). Plaintiff has presented no admissible evidence showing that the delayed treatment itself (as opposed to his pre-existing Hepatitis C) caused "marked exacerbation" of his symptoms or substantial injury.[6] Formica, 739 F. App'x at 755.

Plaintiff also has not established the medical defendants were deliberately indifferent to his Hepatitis C. In 2014, defendant Nuzum carefully evaluated plaintiff's Hepatitis C and determined that treatment was not appropriate based on plaintiff's liver condition and the limited success rate of Interferon Therapy for patients with plaintiff's clinical profile. (See Nuzum Aff. (DE 117-1) ¶¶ 7-11). Defendant Nuzum thereafter routinely monitored plaintiff's lab work and other medical

---

[5]The Fourth Circuit has not addressed the standard for evaluating a deliberate indifference claim premised on delayed medical care in a published opinion.

[6]Plaintiff's unverified memorandum (DE 121-1 at 7) alleges in conclusory fashion that he suffered amnesia, inability to gain weight, and stress due to the delayed medical treatment, but these conclusory allegations are not sufficient to raise a triable issue of fact. Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002) (conclusory allegations, or "a mere scintilla of evidence," are not sufficient to defeat summary judgment).

conditions to determine whether Hepatitis C was causing further damage to his liver, and ultimately chose not to start plaintiff on Interferon Therapy. (See id.). Where a medical professional has thoroughly evaluated plaintiff and determined treatment is not appropriate, and plaintiff simply disagrees with that decision, the claim is at most one of medical negligence, not deliberate indifference. See Wright, 766 F.2d at 849 (holding disagreements between a medical provider and inmate regarding the proper course of treatment do not state a claim for deliberate indifference to serious medical needs); Jackson, 775 F.3d at 178 ("Though hindsight suggests that Lightsey's treatment decisions may have been mistaken, even gravely so, we agree with the district court that Jackson's claim against Lightsey is essentially a disagreement between an inmate and a physician over the inmate's proper medical care, and we consistently have found such disagreements to fall short of showing deliberate indifference." (internal quotation omitted)). Accordingly, the court grants the motions for summary judgment as to the Hepatitis C claim alleged against the medical providers.

Plaintiff also alleges defendant Smith, the DPS medical director, failed to properly supervise defendant Nuzum and other medical providers' treatment of his Hepatitis C. Where plaintiff has failed to demonstrate an underlying constitutional violation as to his Hepatitis C claim, plaintiff cannot establish a claim for supervisory liability. See Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (holding claim for supervisory liability requires underlying constitutional violation).

Finally, plaintiff alleges defendant Nuzum failed to provide Interferon Therapy because plaintiff is African American, in violation of the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To that end, the

Equal Protection Clause provides that "all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Generally, in order to establish an equal protection claim, a plaintiff "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Veney v. Wyche, 293 F.3d 726, 730–31 (4th Cir. 2002) (internal quotation omitted); Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001).

Plaintiff cannot establish intentional discrimination. As defendant Nuzum testified, plaintiff did not receive Interferon Therapy because the treatment was not effective for African Americans with his Hepatitis C genotype. (Nuzum Aff. (DE 117-1) ¶¶ 7-8). Defendant Nuzum thus refused to prescribe Interferon Therapy because the treatment likely would not have been effective for plaintiff, not because of racial animus.

2. Leg Injury Claim

Plaintiff's response to the DPS defendants' motion for summary judgment does not address his claim that defendants were deliberately indifferent to his August 13, 2015, leg injury. Accordingly, it appears plaintiff has abandoned the claim.

But even assuming the claim remains active, the DPS defendants have established plaintiff failed to exhaust his administrative remedies. The Prison Litigation Reform Act states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory, and the court therefore may not excuse failure to exhaust, even to take special circumstances into account. Ross v. Blake, __ U.S. __, 136 S. Ct. 1850, 1856 (2016); Woodford v. Ngo, 548 U.S. 81, 83-85 (2006).

Administrative grievances must contain sufficient detail to "alert[] the prison to the nature of the wrong for which redress is sought" and "give prison officials a fair opportunity to address the alleged [mistreatment]." Wilcox v. Brown, 877 F.3d 161, 167 n.4 (4th Cir. 2017) (quoting Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002)); Moore v. Bennette, 517 F.3d 717, 729 (4th Cir. 2008).

Here, plaintiff does not dispute that his September 11, 2015, grievance was the only grievance he filed describing his leg injury. That grievance, however, was expressly limited to plaintiff's complaints about medical co-payments charged to his inmate trust account. (Sept. 11, 2016, Grievance (DE 128-7) at 6 ("It is emphasized that this grievance does not seek redress for more than once incident, it merely states a chronology of facts depicting the error of the unjust co-pay and its rubber stamping by [prison officials].")). Accordingly, this grievance did not give prison officials a fair opportunity to address the DPS defendants' purportedly inadequate response to plaintiff's leg injury. See Moore, 517 F.3d at 729. Plaintiff's claims related to his leg injury are therefore dismissed without prejudice for failure to exhaust administrative remedies.

3. Defendant Brockington

As noted, defendant Brockington failed to file answer or Rule 12 motion after service of plaintiff's amended complaint, and default has been entered against him. However, "[w]here the liability is joint and several or closely interrelated and a defending party establishes that plaintiff has no cause of action or present right of recovery, this defense generally inures also to the benefit of a defaulting defendant." U.S. ex rel. Hudson v. Peerless Ins. Co., 374 F.2d 942, 945 (4th Cir. 1967). The court also has authority to sua sponte dismiss plaintiff's claims alleged against defendant Brockington if the court determines "at any time" that plaintiff's allegations fail to state a claim on which relief can be granted. 28 U.S.C. § 1915(e)(2)(B).

Plaintiff's claim against defendant Brockington, a DPS corrections officer, is that he failed to provide plaintiff access to medical providers to treat his Hepatitis C. (Am. Compl. (DE 32) § V). This allegation fails to state a claim on which relief can be granted for the reasons discussed above. Although defendant Brockington allegedly refused to take plaintiff to one emergency sick call appointment, plaintiff has not shown (or sufficiently alleged) that such action caused substantial exacerbation of his illness. See Formica, 739 F. App'x at 755 (describing substantial harm element of claim alleging delayed medical care). Accordingly, the court dismisses plaintiff's claims against defendant Brockington pursuant to 28 U.S.C. § 1915(e)(2)(B).

## CONCLUSION

Based on the foregoing, the court GRANTS defendants' motions for summary judgment (DE 114, 125). The court dismisses plaintiff's claims related to his Hepatitis C treatment with prejudice, and dismisses the leg injury claims without prejudice for failure to exhaust administrative remedies. Plaintiff's action against defendant Brockington is dismissed with prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B). The clerk is DIRECTED to close this case

SO ORDERED, this the 29th day of March, 2019.

_____
LOUISE W. FLANAGAN
United States District Judge